UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMERICAN IMMIGRATION VISA KITS, INC., *d/b/a* VISA KITS,

                                        Plaintiff,

                    -v-

LORI CHAVEZ-DEREMER, SECRETARY,
U.S. DEPARTMENT OF LABOR,

                                        Defendant.

---

24 Civ. 7627 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiff American Immigration Visa Kits, Inc., doing business as Visa Kits ("Visa Kits"), brings this action against Lori Chavez-DeRemer, Secretary of the U.S. Department of Labor ("DOL" or the "agency"), pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1). Visa Kits, which assists employers in recruiting noncitizen employees and navigating the immigration process, alleges systematic and unreasonable delays in DOL's process of issuing prevailing wage determinations ("PWDs"), an early step in its process of certifying the proposed employee's visa eligibility. These delays, Visa Kits alleges, harm employers, noncitizen employees, and Visa Kits's own business. It seeks declaratory and injunctive relief compelling DOL to make PWDs within 30 days of an employer's submission of a prevailing wage request.

DOL now moves to dismiss the Amended Complaint ("AC"), Dkt. 27, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons that follow, the Court grants DOL's motion under Rule 12(b)(1), for lack of standing, and dismisses the AC without prejudice.

I.       **Background**[1]

A.       **Factual Background**

1.       **Parties**

Visa Kits is a New York corporation that assists U.S. employers in recruiting noncitizen workers. AC ¶¶ 1, 59. Its clients are employers who seek employment-based immigration visas that allow U.S. companies to sponsor skilled workers and professionals for permanent residence. *Id.* ¶ 59. It assists these companies in navigating certain steps in the visa approval process, which includes obtaining PWDs from DOL. *Id.* It generally alleges that DOL's delays in issuing PWDs have harmed its business because, on learning of delays in obtaining PWDs, employers "choose not to go forward with" recruiting noncitizen employees. *Id.* ¶¶ 80–81. Visa Kits's clients do not pay it until a PWD is issued. *Id.* ¶¶ 77, 81.

Secretary Chavez-DeRemer, who is sued in her official capacity, is responsible for administering the permanent labor certification program, including the issuance of PWDs. *Id.* ¶ 2.

2.       **DOL's Process for Handling Employment-Based Immigration Visas**

Employment-based immigration visas are issued by the Department of Homeland Security and the Department of State, in consultation with the Secretary of Labor. *Id.* ¶ 10. During this process, DOL must certify that the permanent employment of a noncitizen will not negatively impact the U.S. labor force:

---

[1] The following account is drawn from the AC, Dkt. 27, and the parties' submissions on DOL's pending motion. These include DOL's memorandum in support of its motion to dismiss, Dkt. 23 ("Def. Br."); Visa Kits's opposition, Dkt. 32 ("Pl. Br."); and DOL's reply, Dkt. 36 ("Def. Reply"). *See Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (in considering a 12(b)(1) motion, a court may consider, in addition to the pleadings, "evidence outside the pleadings, such as affidavits" (citation omitted)).

Any alien who seeks to enter the United States for the purpose of performing skilled or unskilled labor is inadmissible, unless the Secretary of Labor has determined and certified to the Secretary of State and the Attorney General that—

(I) there are not sufficient workers who are able, willing, qualified (or equally qualified in the case of an alien described in clause (ii)) and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor, and

(II) *the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed.*

*Id.* ¶ 11 (quoting 8 U.S.C. § 1182(a)(5)(A) (emphasis added)).

The process by which DOL makes labor certifications with respect to a proposed permanent employee entails three steps. *Id.* ¶ 13. First, the employer must obtain, from DOL, a PWD, which sets the "wage level that [an employer] must offer and pay a noncitizen employee." *Id.* ¶ 14 (citing 20 C.F.R. § 656.40). Second, the employer must "test the labor market to determine if there are any able and willing American workers who can and will fill the position at the prevailing wage." *Id.* ¶ 16 (citing 8 C.F.R. § 656.17(e)). Third, if the labor market test does not identify any "able and willing domestic workers," the employer seeks "permanent labor certification from DOL." *Id.* ¶ 19 (citing 20 C.F.R. § 656.17(a)(1)). If DOL so certifies as to the position at issue, the employer can then petition for an immigrant visa with United States Citizenship and Immigration Services, which in turn will approve or deny the immigrant visa petition. *Id.* ¶ 20 (citing 8 U.S.C. § 1154(b)).

Visa Kits's lawsuit relates solely to the first step in this process: DOL's issuance of the PWD. Historically, PWDs were issued by state workforce agencies, *id.* ¶ 23, which were presumed familiar with local wages and working conditions, *id.* ¶ 24. But state agencies had varying resources, issued inconsistent wage determinations, and sometimes wrongly treated

identical jobs as distinct positions. *Id.* ¶ 25. In response, in 2008, DOL federalized the PWD

process, explaining:

> Our program experience indicates that by federalizing the prevailing wage
> application component we can institute a high level of efficiency and consistency
> in the determination and provision of prevailing wages which has been a past
> problem. This increased efficiency and consistency will help ensure more accurate
> wage determinations, which result in improved protections for U.S. workers. . . .
> The new system would federalize the issuance of prevailing wages, and delegate
> the authority for determining wages to the [DOL]. It is the Department's goal to
> eventually allow this activity to be performed electronically between the NPC and
> the employer.

*Id.* ¶¶ 26–27 (quoting 73 Fed. Reg. 29942, 29946–47 (May 22, 2008)).

To request a PWD from DOL, an employer must electronically submit a form containing

employment details, including a "job description, education, training, and any other

requirements, a proposed Standard Occupational Code for the position, and worksite

information." *Id.* ¶¶ 29–30. After this form is received, a DOL analyst conducts an initial

review to ensure the submission is valid. *Id.* ¶¶ 32–33. After this review, the analyst proceeds in

one of two ways, depending on whether a collective bargaining agreement applies. *Id.* ¶¶ 34–36.

If the employer attests that such an agreement governs the position, the automated system flags

it, and the analyst certifies the wage that the agreement specifies. *Id.* ¶ 35. But if a collective

bargaining agreement does not apply, the analyst either considers a private wage survey

submitted by the employer or, more commonly, relies on the automated system to calculate a

prevailing wage. *Id.* ¶ 36. It does so using DOL's Occupational Employment Statistics wage

matrix, the position's wage level, and the location of the primary worksite. *Id.* The analyst then

reviews the automatically compiled data for completeness and accuracy before certifying the

wage recommended by the system. *Id.* ¶ 37.

4

### 3.    DOL's Alleged Delays

When DOL first federalized the PWD process, it acknowledged concerns about potential

delays under the new system.  It expressed a commitment to process PWD requests within 30

days of their receipt.  *Id.* ¶ 27 (citing 73 Fed. Reg. 78020, 78027–29 (Dec. 19, 2008)).  It stated:

> The Department understands the desire for a fixed timeframe within which an
> employer will receive a prevailing wage determination.  The timeframe depends on
> a number of factors, including the volume and timing of requests received, the
> method by which requests are received (whether paper or electronic), the
> complexity of the request, and the resources available.   Nevertheless, the
> Department has committed as part of the Final Rule to processing employer
> requests for prevailing wage determinations within 30 days of receipt.

*Id.* (quoting 73 Fed. Reg. 78029).

The AC alleges that despite an enhanced budget, technology, and staffing, DOL has

failed to live up to its commitment to issue PWDs within 30 days of receipt.  *Id.* at 1.  It alleges

that processing times have "exploded," and that, although the volume of applications for PWDs

has risen by 30% between fiscal year ("FY") 2015 and the first three quarters of FY 2024, the

average processing time has more than tripled, from 55 days to 171 days.  *Id.* ¶ 50.  That

increase, the AC alleges, has come despite the facts that the budget for the DOL office

responsible for PWDs increased by more than $20 million during that same period, *id.* ¶ 52; that

technological improvements have enabled prevailing wages to be "automatically" compiled

using DOL's internal data, thereby allowing analysts to review employer submissions in "less

than one minute," *id.* ¶ 39; and that DOL today has assigned 48 staff members to the PWD

process, of whom 43 are dedicated solely to that task, *id.* ¶¶ 43–44, 46.

The AC also faults DOL for not issuing PWDs "in any rational order," *id.* ¶ 54, and for

lacking a "policy, rule, or mechanism that governs, regulates, or controls the time it takes to

make a decision on a particular prevailing wage determination," *id.* ¶ 95 (citation omitted).  In

support of its claim of arbitrary sequencing, the AC alleged disparities in processing times, in that, on January 10, 2022, DOL received 567 submissions and took an average of 201 days to decide them, with a range of 316 days "between the quickest and the slowest determinations." *Id.* ¶ 57. It alleges that the approximately 10-month delay for the slowest of these determinations relative to the fastest reflects "irrational" processing. *Id.* ¶¶ 57–58.

The AC alleges that DOL's delayed and unpredictable processing of PWDs has hurt Visa Kits's business, by deterring clients from engaging it to assist them in obtaining visas requiring PWD certifications. *Id.* ¶¶ 58, 68–71.

**B.    Procedural History**

On October 8, 2024, Visa Kits filed the Complaint, which brought a single APA claim under 5 U.S.C. § 706(1). Dkt. 1. Section 706(1) authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

On January 28, 2025, after an extension, DOL moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Dkt. 22, and filed a memorandum of law in support, Dkt. 23. On January 29, 2025, the Court directed Visa Kits to file any amended complaint or opposition to the motion by February 18, 2025. Dkt. 24.

On March 20, 2025, after an extension, Visa Kits submitted the AC, the operative complaint today. Dkt. 27. The AC again brings a single claim under § 706(1). It seeks an order declaring all PWD delays beyond 30 days unreasonable, AC ¶ 148, and directing that DOL take "all steps necessary to adjudicate [PWDs] in an average of 30 days within 90 days of any such order," *id.* ¶ 149.

On April 10, 2025, DOL stated that it would rely on its previously filed motion to dismiss. Dkt. 28. On May 8, 2025, Visa Kits opposed. Dkt 32. On June 23, after an extension, DOL replied. Dkt. 36.

## II.     DOL's Motion Under Rule 12(b)(1)

DOL moves to dismiss under both Rules 12(b)(1) and 12(b)(6).  Under Rule 12(b)(1),

DOL argues that Visa Kits lacks standing, because the AC does not allege a particularized injury,

*see* Def. Br. at 7–8, or one fairly traceable to DOL's alleged delays, *see id.* at 8–10.  DOL

alternatively moves to dismiss under Rule 12(b)(6), arguing that the APA, although permitting

challenges to discrete agency actions, does not permit broad, programmatic challenges of the sort

Visa Kits pursues. *See id.* at 11–12.

The Court considers the Rule 12(b)(1) motion first and dismisses the AC for lack of

standing.  The dismissal is without prejudice, and without reaching DOL's challenge under Rule

12(b)(6). *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (before

reaching merits, court must confirm it has subject matter jurisdiction).

### A.     Applicable Legal Standards

Article III of the Constitution limits the federal judicial power to the resolution of cases

and controversies.  U.S. Const. art. III, § 2.  That limitation requires that a plaintiff have standing

to sue. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  Article III standing is thus "the

threshold question in every federal case" and "determin[es] the power of the court to entertain

the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  Absent standing, a case must be dismissed

for lack of subject matter jurisdiction under Rule 12(b)(1). *See Makarova v. United States*, 201

F.3d 110, 113 (2d Cir. 2000).

To satisfy the "irreducible constitutional minimum" of Article III standing, a plaintiff

must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of

the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo,

Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan*, 504 U.S. at 560–61).  Failure to

establish any of these three elements defeats standing and requires dismissal of the claim. *See*

7

*Lujan*, 504 U.S. at 561; *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021) ("No concrete

harm, no standing."). And because "[s]tanding is not dispensed in gross," *Davis v. Fed. Election*

*Comm'n*, 554 U.S. 724, 734 (2008) (citation omitted), a plaintiff must "demonstrate standing for

each claim and form of relief sought," *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir.

2011) (citation omitted).

The burden is on the plaintiff to establish subject matter jurisdiction by a preponderance

of the evidence. *Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011) (citation omitted);

*Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) ("[J]urisdiction must be

shown affirmatively . . . ." (citation omitted)). In resolving a motion to dismiss for lack of

subject matter jurisdiction, "the court must take all facts alleged in the complaint as true and

draw all reasonable inferences in favor of plaintiff." *Nat. Res. Def. Council v. Johnson*, 461 F.3d

164, 171 (2d Cir. 2006) (citation omitted).

### B.    Analysis

DOL argues that Visa Kits lacks Article III standing both because the AC does not allege

a particularized injury, *see* Def. Br. at 7–8, and because the injury it alleges is not fairly traceable

to agency action, *see id.* at 8–10.

To resolve DOJ's motion under Rule 12(b)(1), the Court need reach only the former

argument. DOL argues that the injury pled in the AC is unacceptably generalized. The AC, it

argues, does not identify any *"specific* employer" who, as a result of DOL's delays, either

declined to engage Visa Kits or terminated an engagement with Visa Kits. *Id.* at 7 (emphasis in

original). And, it argues, the AC does not allege any "injury from the delay of any *specific*

prevailing wage determination." *Id.* (emphasis in original) (citation omitted). The AC, DOL

argues, thus alleges "nothing more than a 'general statement of economic damage'" from the

DOL's pattern of delays, and as such does not plead a concrete and particularized injury. *Id.* at

7–8 (quoting *McDermott v. N.Y. Metro LLC*, 664 F. Supp. 2d 294, 301 (S.D.N.Y. 2009)).

DOL is correct. As the party invoking federal jurisdiction, Visa Kits bears the burden of

establishing that it has suffered "an injury in fact that is concrete, particularized, and actual or

imminent." *TransUnion*, 594 U.S. at 423 (citing *Lujan*, 504 U.S. at 560–61); *Katz v. Donna*

*Karan Int'l, Inc.*, No. 14 Civ. 740, 2017 WL 2191605, at *3 (S.D.N.Y. May 17, 2017) ("[A]

concrete injury must be *de facto*; that is, it must actually exist, and be real, and not abstract."

(citation omitted)), *aff'd and remanded sub nom. Katz v. Donna Karan Co., LLC*, 872 F.3d 114

(2d Cir. 2017). "[W]hether a harm qualifies as 'concrete' hinges on 'whether the alleged injury

to the plaintiff has a "close relationship" to a harm "traditionally" recognized as providing a

basis for a lawsuit in American courts.'" *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th

58, 63 (2d Cir. 2021) (quoting *TransUnion*, 594 U.S. at 424). An allegation of "bare procedural

violation[s], divorced from any concrete harm . . . does not suffice for Article III standing."

*TransUnion*, 594 U.S. at 440 (citation omitted).

The AC's theory of injury is that DOL's delays in processing PWDs have resulted in lost

revenue for Visa Kits. It alleges that average processing times have "exploded," reaching 171

days in 2024. AC ¶ 50. This, it alleges, "kill[s] demand" for Visa Kits's services, because

employers, upon learning of the delays, abandon the visa sponsorship process. *Id.* ¶¶ 80–81.

The AC alleges that Visa Kits "has lost several potential employer clients," *id.* ¶ 70, which in

turn has resulted in "increased costs," "lost revenue," and lost good will, *id.* ¶ 122. And, the AC

alleges, when employers hire Visa Kits, its compensation is delayed because it "does not start

getting paid . . . until the PWD is issued." *Id.* ¶ 77. Specifically, Visa Kits is allegedly not paid

until the employer selects a candidate and directs Visa Kits to prepare a signed offer letter—steps

that depend on DOL first issuing the PWD. *Id.* ¶¶ 72–78. Finally, the AC alleges that DOL's "irrational" adjudication process harms Visa Kits by introducing unpredictability. *Id.* ¶ 58. Rather than following a "first in, first out" system, *id.* ¶ 92, DOL has "no policy, rule, or mechanism" governing the PWD queue, *id.* ¶ 95. Thus, two applications filed on the same day may be decided nearly 11 months apart, a disparity the AC alleges "hurts employers, employees, and [Visa Kits]." *Id.* ¶ 58.

The AC's generalized and conclusory allegations do not adequately plead the "injury in fact" required for Article III standing. *Spokeo*, 578 U.S. at 338 (quoting *Lujan*, 504 U.S. at 560–61). To be sure, lost revenue is a quintessential cognizable harm. *See Dhinsa v. Krueger*, 917 F.3d 70, 78 (2d Cir. 2019) ("'[M]onetary loss' is a quintessential injury in fact . . . ." (citation omitted)); *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013) ("Even a small financial loss is an injury for purposes of Article III standing." (citing *United States v. Students Challenging Regul. Agency Procs. (SCRAP)*, 412 U.S. 669, 690 n.14 (1973))); *Evolution Fast Food One, LP v. HVFG, LLC*, 720 F. Supp. 3d 251, 265 (S.D.N.Y. 2024) ("[L]ost money or property—economic injury—is itself a classic form of injury in fact[.]" (citation omitted)). But the AC pleads the fact of lost revenue only generally and conclusorily. It does not identify any particular or concrete loss that Visa Kits has experienced. It merely asserts that Visa Kits "has lost several potential employer clients," AC ¶ 70; that it "does not get paid . . . until the PWD comes through," *id.* ¶ 78; and that it is being "hurt[]" by DOL's "irrational" PWD procedure, *id.* ¶ 58. But it does not identify any specific instance in which Visa Kits lost income to which it was otherwise entitled as a result of a PWD delay, or other specific instance in which it lost revenue as a result of DOL's allegedly long and unpredictable adjudication process.

Such hazy allegations do not plead a cognizable injury in fact. *See, e.g., Nat'l Prods. Ass'n v. James*, No. 23 Civ. 8912, 2024 WL 2977683, at *8 (E.D.N.Y. June 13, 2024) (standing insufficiently alleged where complaint "speculate[d] about a potential loss of . . . customers and revenues" and failed to cite "evidence that any . . . members have decided to exit the market, that any of their customers have actually been lost, or that any of their orders have actually been reduced" (citation omitted)); *Campbell v. Portfolio Recovery Assocs., LLC*, No. 21 Civ. 1322, 2022 WL 657225, at *1 (E.D.N.Y. Mar. 4, 2022) (complaint's "vague claims of 'attempts to get financing' and 'negative impact'" insufficient to confer standing (citing *Maddox*, 19 F.4th at 65)); *Parker Madison Partners v. Airbnb, Inc.*, 283 F. Supp. 3d 174, 181 (S.D.N.Y. 2017) (generalized allegations of "damage to [plaintiff's] business," "substantial lost revenues," and "threats to [its] industry" insufficient to confer standing (citation omitted)); *Fullwood v. Wolfgang's Steakhouse, Inc.*, No. 13 Civ. 7174, 2017 WL 377931, at *6 (S.D.N.Y. Jan. 26, 2017) (complaint's conclusory allegation that plaintiff was "damaged" by defendants' conduct was "plainly insufficient to plead plausibly . . . a concrete and particularized injury" (citing *Iqbal*, 556 U.S. at 678)). The AC's threadbare references to lost clients, delayed compensation, and generalized harm as an alleged result of DOL's adjudication process fail to allege the requisite injury in fact.

The AC does identify one lost business opportunity in slightly greater detail. It alleges that, in March 2025, Visa Kits had an initial telephonic consultation with "a franchisee of a major fast-food restaurant with 16-units in Ohio" whom it does not identify. AC ¶ 67. It alleges that, although "[i]nitially, the franchisee was eager to hear about [Visa Kits's] program as a potential solution[,] . . . as soon as they heard about the processing time for obtaining a PWD, they abruptly ended the call, unwilling to hear anything further." *Id.* ¶ 68.

11

That lone anecdote, which essentially alleged that Visa Kits was hung up on in the middle of a preliminary phone pitch to a prospective customer, is inadequate to support standing.  To plead a concrete injury based on a lost business opportunity, a plaintiff must plead that the opportunity lost was definite and imminent.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (a plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending" (citation omitted)); *Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89, 90 (2d Cir. 2017) ("[A] future injury must be 'certainly impending,' rather than simply speculative." (quoting *Clapper*, 568 U.S. at 410)); *Nat. Res. Def. Council, Inc. v. Wheeler*, 367 F. Supp. 3d 219, 233 (S.D.N.Y. 2019) ("'[I]mminence' requires more than an interest in an undefined benefit or opportunity at some point in the future." (citing *MGM Resorts Int'l Glob. Gaming Dev., LLC v. Malloy*, 861 F.3d 40, 47–48 (2d Cir. 2017), *as amended* (Aug. 2, 2017))).  Speculative claims of loss—such as that the recipient of a preliminary sales call hung up upon hearing about PWD delays—will not suffice. *See, e.g.*, *Mordy's Appliance Repair Serv. LLC v. Amazon Servs. LLC*, No. 17 Civ. 5376, 2018 WL 3650135, at *2 (S.D.N.Y. July 31, 2018) (no standing where plaintiff alleged lost profits from abandoning a sales plan due to fear of product removal, as the alleged harm was not "certainly impending" and rested on "a highly attenuated chain of possibilities" (quoting *Clapper*, 568 U.S. at 410)), *aff'd*, 756 F. App'x 71 (2d Cir. 2019); *MGM Resorts*, 861 F.3d at 46–47 (harm alleged from barriers to public contract bidding "not sufficiently imminent" where complaint did not plead concrete plans to bid on a particular contract); *Robainas v. Metro. Life Ins. Co.*, No. 14 Civ. 9926, 2015 WL 5918200, at *6 (S.D.N.Y. Oct. 9, 2015) (complaint did not plead "sufficiently concrete injury" where it pled that customers purchased riskier insurance policies but did not plead "that they would not have purchased policies . . . but for [defendant's]

nondisclosures" (citation omitted)), *aff'd sub nom. Ross v. AXA Equitable Life Ins. Co.*, 680 F.
App'x 41 (2d Cir. 2017). That anecdote is far afield from cases holding standing well-pled based
on lost economic opportunities. *See, e.g., Breuninger v. Williams*, No. 20 Civ. 7033, 2022 WL
4384000, at *5 n.4 (S.D.N.Y. Sept. 22, 2022) (plaintiff's alleged loss of a specific contract worth
$2 million satisfied requirement that the harm "affect the plaintiff in a personal and individual
way" (quoting *EVIP Canada, Inc. v. Schnader Harrison Segal & Lewis, LLP*, No. 21-947, 2022
WL 3904541, at *1 (2d Cir. Aug. 31, 2022))); *Planned Parenthood of New York City, Inc. v. U.S.
Dep't of Health & Hum. Servs.*, 337 F. Supp. 3d 308, 321–22 (S.D.N.Y. 2018) (injury well-pled
where plaintiff had a "prior bidding history" and had made specific "exploratory efforts" toward
applying for a grant; court distinguishes cases involving plaintiffs without "concrete plans" or a
"specific project" (citation omitted)).

   The AC alternatively pleads injuries to other entities besides Visa Kits. It alleges that
DOL's delays with respect to PWDs harm employers, noncitizen workers, and the national
economy. *See* AC ¶ 127 ("With over 1 million unfilled job openings nationwide, employers are
unable to . . . legally hire the workers that they need."); *id.* ¶¶ 129–30 (PWD delays "deprive[]
noncitizens who have immigrant visas . . . of the ability to apply for adjustment of status, work
authorization, and advance parole," and prevent nonimmigrants from extending their status,
thereby jeopardizing their "lawful status" and potentially leading to "family separation");
*id.* ¶¶ 124, 126 (alleging "wide-reaching, devastating repercussions . . . on the overall economic
landscape," including harm to school districts that experience hiring disruptions, "doubling of
class sizes," and "reduced educational services" due to PWD delays).

   These alleged consequences do not give Visa Kits standing. Claims of harm to an
industry or the general public do not confer standing on the plaintiff absent a showing of injury

to that plaintiff. *See Carney v. Adams*, 592 U.S. 53, 59 (2020) (plaintiff lacked standing to challenge state's judicial political-balance provisions where claim reflected an "abstract 'general interest common to all members of the public,'" not a concrete and particularized injury to plaintiff (quoting *Lance v. Coffman*, 549 U.S. 437, 440 (2007) (per curiam))); *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 601 (2007) (complaint that pled a general "grievance about government" and sought relief "that no more directly and tangibly benefits [plaintiff] than it does the public at large" did not satisfy Article III (citation omitted)); *Rivera v. United States*, No. 23-7522, 2024 WL 4645814, at *1 (2d Cir. Nov. 1, 2024) (allegations that "mismanagement" of Social Security funds and immigration policies would "cost tax payers billions of dollars" and "lead to future reductions in benefits" did not plead a cognizable injury in fact (citation omitted)); *Elliott v. City of New York*, No. 6 Civ. 296, 2010 WL 4628508, at *9 (S.D.N.Y. Nov. 15, 2010) (allegations of "[g]eneralized harm to an ecosystem" were insufficient to confer standing (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009)), *aff'd*, 497 F. App'x 108 (2d Cir. 2012); *McDermott*, 664 F. Supp. 2d at 301 (complaint did not plead concrete injury where it alleged a "general statement of economic damage" to business sector as a result of anti-competitive conduct).

The AC, which makes only generalized allegations of injury, thus does not plead a concrete and particularized harm. The Court accordingly grants DOL's Rule 12(b)(1) motion, and dismisses the action without prejudice. *See Lleshi v. Kerry*, 127 F. Supp. 3d 196, 199 (S.D.N.Y. 2015) ("Pursuant to Rule 12(b)(1), dismissal for lack of subject matter jurisdiction is

appropriate if the Court determines that it lacks the constitutional or statutory power to adjudicate the case." (citing Fed. R. Civ. P. 12(b)(1), and *Makarova*, 201 F.3d at 113)).[2]

## CONCLUSION

For the foregoing reasons, the Court grants DOL's motion to dismiss for lack of subject matter jurisdiction. Because the dismissal is under Rule 12(b)(1), the dismissal is without prejudice to Visa Kits's right to file a new lawsuit properly alleging subject matter jurisdiction.

The Clerk of Court is respectfully directed to terminate all pending motions and close this case.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: August 4, 2025
New York, New York

---

[2] In light of the dismissal for lack of jurisdiction, the Court does not, and cannot, reach DOL's separate motion to dismiss under Rule 12(b)(6). Should Visa Kits choose to bring a new lawsuit with fortified allegations of injury, its counsel is advised to give careful attention to that motion. An APA claim for unreasonable delay must "assert[] that an agency failed to take a *discrete* agency action that it is *required to take*," *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original), as opposed to alleging a "'wholesale' defect" in the agency's program or adjudicative process, *New York v. U.S. E.P.A.*, 350 F. Supp. 2d 429, 445 (S.D.N.Y. 2004) (quoting *Lujan*, 497 U.S. at 891).